Leonel Jasso MENCHACA, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–93–00217–CR.

Court of Appeals of Texas, El Paso.

April 27, 1995.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State/appellee.

Before BARAJAS, C.J., and LARSEN and McCOLLUM, JJ.

## OPINION

BARAJAS, Chief Justice.

Leonel Jasso Menchaca appeals his conviction for the offense of possession of more than five but less than fifty pounds of marihuana. Trial was by jury before the Honorable Virgil E. Mulanex, judge, sitting on assignment. Upon a finding of guilty, the trial court assessed punishment at incarceration in the Institutional Division of the Texas Department of Criminal Justice for a period of ten years, probated for a like term. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

At 5:20 on the morning of November 28, 1992, Appellant presented himself for customs inspection at the Paso del Norte Bridge, an international port of entry connecting El Paso, Texas, with adjacent Ciudad Juarez, Chihuahua, Mexico. Alone in a 1982 Pontiac station wagon, Appellant declared that he was a United States citizen and that he was bringing nothing into the country. The customs inspector observed that the car bore temporary (paper) Texas license plates, the key that operated it was the only one on the key chain to which it was attached, and that Appellant appeared nervous in that his hands were shaking and he avoided making eye contact. When questioned, Appellant stated that he had only borrowed the car from a friend and was taking it to Deming, New Mexico. His suspicion aroused, the customs inspector asked Appellant to open the vehicle's trunk. While Appellant complied, the inspector opened the passenger side door and observed a small cylindrical object wrapped in gray duct tape underneath the right front fender. The inspector then fetched Appellant from behind the car, escorted him to a nearby building for questioning, and drove the vehicle to a secondary inspection area. With the aid of a trained canine, inspectors found other objects, similarly packaged and secreted, containing 49.5 pounds of marihuana.

During questioning, Appellant claimed the car belonged to Ramon Huerta, from whom he obtained the vehicle in a Juarez bar at 4:00 that morning. Appellant told inspectors that Huerta had remained in Juarez a short while to bid farewell to "a lady friend." Appellant planned to cross into the United States, wait for Huerta at the first street into El Paso, and drive with him to Deming or Hatch, New Mexico, to pick chiles. Documents found in the glove compartment indicated Ramon Huerta had recently purchased the vehicle and that it was registered in his name.

Later investigation revealed that Appellant, contrary to his earlier assertions, was not a United States citizen. A search of his wallet produced a stub from a paycheck issued by a New Mexico farm, which indicated Appellant had been paid by the bucket, presumably for picking chiles.

## II. DISCUSSION

Appellant attacks his conviction in eight points of error. In his first point of error, Appellant claims the trial court erred by curtailing his voir dire examination of the 45-person venire after some 32 minutes of questioning. The trial court allowed each party 30 minutes in which to question the venire as a whole. The trial court informed Appellant's counsel when two minutes remained in her allotted time and, after those two minutes elapsed, informed her that her time had expired, which precipitated a bench conference outside the jury's hearing. During the bench conference, the trial court admitted into evidence eight pages of hand-written questions counsel was planning to ask of the venire. The trial court determined that only the subjects of immigration status and the right not to testify had not been reached, and allowed counsel two additional minutes to examine the venire about these subjects. During the additional time, counsel questioned the venire as a whole, and three venirepersons individually, about the right not to testify and the manner in which it might apply to Appellant. The trial court then

informed counsel that her time had once again expired, which precipitated yet another bench conference during which the trial court offered to itself question the venire about immigration status on counsel's behalf[1]. With counsel's consent, the trial court asked if immigration status would affect a venireperson's service, to which question one venireperson responded affirmatively.

◼ A defendant's constitutionally guaranteed right to counsel encompasses the right to question prospective jurors in order to intelligently and effectively exercise peremptory challenges and challenges for cause. *Ex parte McKay,* 819 S.W.2d 478, 482 (Tex. Crim.App.1990); *Mata v. State,* 867 S.W.2d 798 (Tex.App.—El Paso 1993, no pet.). Both the State and the defendant must be allowed to explore any attitudes of venirepersons that might render them challengeable for cause or otherwise subjectively undesirable as jurors. *Draughon v. State,* 831 S.W.2d 331, 334 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993). The parties' rights coexist with the trial court's right to control voir dire examination, which is entrusted to its sound discretion and which extends to imposing reasonable limitations on the time for which counsel may question the venire. *Caldwell v. State,* 818 S.W.2d 790, 793 (Tex.Crim.App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992); *Allridge v. State,* 762 S.W.2d 146 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). The benefits realized from measures employed to control the voir dire process must not, however, be attained at the risk of deny-ing to a party a substantial right. *Smith v. State,* 703 S.W.2d 641, 645 (Tex.Crim.App. 1985).

◼ When a party challenges a trial court's limitation on the voir dire process, the reviewing court must analyze the claim under an abuse of discretion standard, the focus of which is whether the appellant proffered a proper question concerning a proper area of inquiry. *Caldwell v. State,* 818 S.W.2d at 793; *Cockrum v. State,* 758 S.W.2d 577, 584 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989). If a proper question is disallowed, harm is presumed because the party has been denied the ability to intelligently exercise his peremptory strikes. *Smith v. State,* 703 S.W.2d at 643; *Allridge v. State,* 762 S.W.2d at 163. Thus, in order to decide if the trial court erred by disallowing a party's voir dire request, the reviewing court must first determine if he proffered a proper question. A proper question is one that seeks to discover a venireperson's views on an issue applicable to the case. *Caldwell v. State,* 818 S.W.2d at 794; *Guerra v. State,* 771 S.W.2d 453, 468 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989).

We do not undertake a systematic analysis of the extent to which Appellant complied with the foregoing requirements because, assuming he did, we find Appellant's first point of error controlled by *Cantu v. State,* 842 S.W.2d 667 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993), which involved the denial

---

1. The proceedings of the second bench conference follow:

 COUNSEL: Another—note our objection for the record, your honor.
 THE COURT: I gave you two minutes to cover two subjects. You only covered one of them. I assume you did not want to cover the other one with the panel as a whole.
 COUNSEL: I wanted to cover both of them with a number of panelists, not every one of them, of course.
 THE COURT: I wanted to cover both of them with a number of panelists, not every one of them, of course.
 THE COURT: If you wish, at this time I will direct the question to the panel if immigration status would make any difference to them.
 COUNSEL: Yes, please.

 THE COURT: Are you asking that be directed to them?
 COUNSEL: Yes, your honor. I think that's very important to us.
 . . . .
 THE COURT: Members of the panel, I do have one additional question that I will direct to you at this time, and that's regarding the immigration status of the defendant, which at this time I'm not sure exactly what the evidence may be. But if it did show that for some reason the defendant was not legally in the States at this time, would that in any way affect your service as a member of this jury?
 One venireperson responded to the trial court's query in the affirmative. Counsel thereafter conducted no further examination of the venire as a whole.

of an explicit request for additional time to question a particular venireperson about the effect of the defendant's voluntary intoxication. The Court applied the foregoing principles and determined that such a denial did not amount to an abuse of discretion. The Court found significant the trial court's decision to grant additional time after the defendant's originally allotted 30 minutes had expired, and the trial court's questioning of the venireperson about his general ability to follow the law and instructions given him by the court, which questioning came after the trial court's interruption and served as a sort of surrogate screening process.

 Like *Cantu*, the instant case involves the denial of additional time to question venirepersons about a given subject[2]. In both cases, the trial court granted one extension of time to conduct further questioning. Both cases also involve questioning by the trial court after it put an end to a party's voir dire examination. Further, the instant case features a mitigating factor not present in *Cantu:* the opportunity to individually question particular venirepersons without interruption at the bench. The record reflects that Appellant's counsel so questioned at least ten venirepersons after her general examination of the venire had ceased, without apparent interruption or limitation by the trial court. Given the significance that *Cantu* attributes to the trial court's beneficence in granting one extension of time and its surrogate questioning of a venireperson, the latter of which we find equally applicable to the trial court's questioning of the venire as a whole, and Appellant's additional opportunity to question individually venirepersons at the bench, we find the trial court did not abuse its discretion in denying Appellant's implicit request[3]. Accordingly, Appellant's first point of error is overruled[4].

2. The reasonableness of the time limits imposed by the trial court presents an issue separate from the denial of additional time to further question the venire or individual venirepersons. *See Caldwell v. State*, 818 S.W.2d at 793 (so distinguishing). In his perhaps intentionally cryptic argument related to his first point of error, Appellant does not make clear which issue he wishes to raise. We note that Appellant never objected to the thirty minute time limit imposed by the trial court, and we do not perceive his first point of error, which complains of the "curtailing" of his voir dire examination, to encompass the propriety of this limit. Further, Appellant did not object to the length of additional time he was granted to examine the venire about his immigration status and his right not to testify, and we do not perceive his first point of error to be directed at this limit. His first objection came at the beginning of the second bench conference, and did not clearly identify its object. Appellant never expressly requested additional time to conduct further voir dire examination. Thus, we find that Appellant does not raise the separate issue of the propriety of the general or additional time limits imposed by the trial court. Indeed, we are not convinced that Appellant has properly preserved any error whatever. We do not resolve the preservation issue, however, because of our disposition of Appellant's substantive claims, at least those we can discern from his brief.
 In identifying those claims, we find significant that Appellant failed to object before being twice informed his time had expired, and that he failed to explicitly request additional time to question the venire. Because of these failures, we examine only whether the trial court erred by refusing to grant Appellant yet more time to question the venire and individual venirepersons about his immigration status and to individually question more venirepersons about his right not to testify. We emphasize that Appellant did not actually make such a request and in his brief makes little attempt to define the issue he wishes to raise. Although the substance of the second bench conference and of his brief may not be sufficient to even implicitly raise the issue with adequate specificity, this issue is raised more clearly than any other. In the interest of justice and out of fairness to Appellant, we therefore address it.

3. In the alternative, we note the record lacks evidence of the ultimate composition of the jury. Absent such evidence, we cannot conclude Appellant was denied the opportunity to question any venireperson who eventually served on the jury. In a succinct opinion, the Court of Criminal Appeals held that such a lack of evidence prevents a defendant from showing he has been harmed by the trial court's action and disposes of the issue. *Whitaker v. State*, 653 S.W.2d 781 (Tex.Crim.App.1983). Although *Whitaker* apparently involved a challenge to the global limit set on a defendant's voir dire, which we earlier distinguished as a separate issue not raised by Appellant, we find *Whitaker's* rationale equally applicable to the instant case and find it an independently sufficient basis to overrule Appellant's first point of error.

4. In his conditional second point of error, Appellant complains of the exclusion from the record of the eight pages of questions the trial court admitted into evidence during the second bench conference. The record contains an eight page

In his third through seventh points of error, Appellant claims the trial court erred in admitting into evidence a hand-written letter found in the glove compartment of the car he was driving [5]. When inspectors presented it to Appellant, he denied knowledge of it. Significantly, when one inspector read the letter out loud, Appellant helped him decipher several words he had difficulty reading. The inspector testified that Appellant seemed to anticipate the letter's wording, completing words when the inspector had only pronounced part of them.

We generally review a trial court's evidentiary rulings for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378–380 (Tex.Crim.App.1990); *Brown v. State*, 880 S.W.2d 249, 254 (Tex.App.—El Paso 1994, no pet.). Because this standard has been much defined by Texas civil courts, we cite their various formulations of it. *Cf. Montgomery v. State*, 810 S.W.2d at 380 (quoting Texas Supreme Court's formulation of standard in *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)). "A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Johnson v. Fourth Court of Appeals*, 700

S.W.2d 916, 917 (Tex.1985) (orig. proceeding). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d at 241–242; *Amador v. Tan*, 855 S.W.2d 131, 133 (Tex.App.—El Paso 1993, writ denied). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer*, 701 S.W.2d at 242, (citing *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984)); *Amador*, 855 S.W.2d at 133. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242, (citing *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965)). A mere error of judgment is not an abuse of discretion. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex. 1989); *Hallmark v. Hand*, 885 S.W.2d 471 (Tex.App.—El Paso 1994, writ denied).

In his third point of error, Appellant claims the letter was irrelevant. Relevant evidence is generally admissible, while

document hand-marked as "Def #1 Voir Dire." Although we granted Appellant's pre-submission motion to supplement the record with a similar document, it is not clear whether Def. #1 Voir Dire appears in the record by supplementation or was already in the record when the motion was filed. It matters little because the State concedes the document in the record is the one admitted during the second bench conference. We therefore do not address Appellant's second point of error.

5. The letter was discovered during a search of the car conducted after it was driven to a secondary inspection area. A copy of the original, hand-written in Spanish, appears as an exhibit in the record. It was translated at trial by the court interpreter, who read it into the record as follows:

Humberto, if possible, follow Nacho, who will cross him on over here, because as you know, I'm not able to go over there. His brother was going to deliver this letter. And in it, I tell you that I wish to speak directly with you about our matter, so that there will be no misunderstandings between us. The person who's going along with your brother is the

person who's going to help us cross the car over. Please follow them. Please follow it until—to the place where he will show his papers and that the car will arrive, or get to the check point in order to verify or ascertain that in reality the car will cross. We, or rather—or in other words, Ramon and myself are going to be waiting for it right after the first street which goes into El Paso. After that, try to—try as hard as you can to come, all three of you, over to here, to the apartment. Or if it is possible for me, I will wait for you at tho place that Nacho already knows about where I waited for you last time. I will wait for you in order to bring you. And if it is not—it does not turn out like that, Nacho and his brother already have the beeper number where they can call or can talk, and then we will go back for you. And finally, I charge you with the responsibility of—and finally, I ask you very much to follow the car until—as far as it is possible, and do not let it out of your sight until you see it cross. You can come on foot up until the point—you can come on foot until just before the place where passports are checked. Nacho also knows this. Nothing more at the present. Your friend, Meny.

irrelevant evidence is generally inadmissible. TEX.R.CRIM.EVID. 402. Evidence is relevant if it logically serves to make an elemental fact more or less probable, if it serves to make an evidentiary fact that inferentially leads to an elemental fact more or less probable, or if it serves to make likely defensive evidence that undermines an elemental fact more or less probable. *Beasley v. State,* 838 S.W.2d 695 (Tex.Crim.App.—Dallas 1992, pet. ref'd), *cert. denied,* —— U.S. ——, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993).

 The primary dispute in the instant case is whether Appellant knowingly or intentionally possessed the contraband. Appellant claims the letter bears no relation to this issue. He cites the lack of evidence of the letter's author, the date it was written, to whom it was written, precisely the matter it concerned, or that he was part of any scheme it might be interpreted to describe. His conclusion depends, however, largely on the veracity of his explanations of how he came into possession of the vehicle and that he was unaware the vehicle was laden with marihuana. Neither the jury nor the trial court were bound to believe these explanations.

Appellant in his brief goes on to describe several diverse scenarios that might be consistent with the existence, contents, and location of the document. In examining whether the trial court abused its discretion in deeming the letter relevant, which was an implicit predicate to the trial court's admission of it into evidence, we find it necessary to affirm the existence of only one theory establishing its relevance, although there certainly exist other theories that would support the trial court's decision. Appellant conceded he was acquainted with Ramon Huerta, and claimed to be on his way to meet him when he was apprehended. The letter indicates "Ramon" will wait with the author for the addressee's arrival. The letter goes on to specify the meeting place as the "first street which goes into El Paso." Appellant told customs inspectors he was planning to cross the bridge into El Paso and meet Huerta at the first street thereafter. The trial court could have

connected this evidence to the issue of Appellant's intent by theorizing that, if Appellant were merely the unknowing pigeon he claimed to be, his victimizers would not have placed him alone in a vehicle laden with valuable cargo and left a letter describing the details of the transaction in a place to which only Appellant had access. Whether or not this theory is true or even likely, it at least establishes that the letter meets the threshold relevance requirement. Significantly, the trial court could have concluded that Appellant was actually aware of the letter and its contents because of one inspector's testimony that Appellant seemed to anticipate the letter's wording and corrected his reading of it.[6] Because only one theory of the letter's relevance is needed to establish that the trial court did not abuse its discretion in deeming it relevant, and because the foregoing fills this role, we overrule Appellant's third point of error.

In his fourth and fifth points of error, Appellant claims that the trial court erred by admitting the letter because its probative value was outweighed by its prejudicial effect and by failing altogether to balance these two attributes. We first examine whether the trial court performed the required balancing test.

 When a party lodges an objection under Texas Rule of Criminal Evidence 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, a trial court "has no discretion to refuse to conduct a ... balancing of probativeness versus prejudice...." *Montgomery v. State,* 810 S.W.2d at 390. A trial court is not, however, required to conduct a separate hearing on the matter or even to announce on the record that it is mentally balancing the two factors. *See Montgomery v. State,* 810 S.W.2d at 393 n. 4 (noting federal Fifth Circuit requires trial courts to articulate on the record their considerations in conducting balancing test). One court of appeals, interpreting *Montgomery,* has put the matter well:

---

**6.** This evidence was first adduced during an offer of proof. Thus, the trial court had the benefit of

it when it ruled on the admissibility of the letter.

The Court of Criminal Appeals does not require the trial court to conduct the balancing test during a formal hearing held for that purpose or that it announce for the record that it has, in fact, conducted and completed the balancing test in its own mind. Although not requiring the procedure, the *Montgomery* court merely recognize[d] that appellate review would be made easier if the trial court would list reasons for its decision in the record.

*Houston v. State*, 832 S.W.2d 180, 184 (Tex. App.—Waco 1992), *pet. dism'd, improvidently granted*, 846 S.W.2d 848 (Tex.Crim.App. 1993). The record reflects Appellant lodged a Rule 403 objection, which was overruled. The trial court did not refuse to consider the objection or to conduct the requisite balancing test. Because the law does not require affirmative record evidence that the trial court conducted a Rule 403 balancing test, and because the record does not indicate the trial court refused to conduct such a test, we cannot conclude the trial court abused its discretion by failing to balance the letter's probative value against its unfairly prejudicial effect. Accordingly, Appellant's fourth point of error is overruled.

 In his fifth point of error, Appellant claims the letter should not have been admitted because its probative value was substantially outweighed by its prejudicial effect. The Court of Appeals has counseled especially deferential appellate review of a trial court's Rule 403 analysis.

If judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal....

In view of ... the use of "may" in [the rule], it is manifest that the draftsman intended that the trial judge be given a very substantial discretion in balancing probative value on the one hand and unfair prejudice on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise because of a differing view of the highly subjective factors of (a) the probative value, or (b) the prejudice presented by the evidence. This inference is strengthened by the fact that the Rule does not establish a mere imbalance as the standard, but rather requires that the evidence "may" be barred only if its probative value is "substantially" outweighed by [unfair] prejudice.

*Montgomery v. State*, 810 S.W.2d at 379 (emphasis added) (internal quotations omitted) (quoting *United States v. Long*, 574 F.2d 761 (3rd Cir.1978)). The letter contemplates a "matter" and a personal meeting, which together could be fairly interpreted as a reference to a discrete transaction. The letter then provides details of the meeting, at least some of which Appellant admitted he planned to fulfill by his actions. Appellant appeared to be familiar with the contents of the letter. While certainly not a smoking gun, the letter provides some reason to think Appellant intentionally or knowingly possessed the contraband found in the vehicle he was driving. In this light, the letter is certainly prejudicial. But we do not find it **unfairly** prejudicial. The letter contains no evidence of extraneous offenses that might involve Appellant. Indeed, the letter does not even implicate him directly. It is merely some evidence of his intent on which the jury might have permissibly relied. Given the particularly deferential standards we here employ, we conclude Appellant has not carried his heavy burden of showing the trial court abused its discretion in admitting the letter over his Rule 403 objection. Accordingly, we overrule his fifth point of error.

 In his sixth and seventh points of error, Appellant claims the letter constitutes hearsay and its admission violated his Sixth Amendment right to confront witnesses against him. In three pages of argument on these points, Appellant scarcely nods to the Sixth Amendment and Texas Rule of Criminal Evidence 801, mentioning each only once. He cites no case law. He cites no treatises or law review articles. He provides absolutely no authority concerning what constitutes a witness, what suffices as confrontation, when the right to confrontation applies, or to show the letter contains statements, that those statements were offered for their truth, and that no hearsay exceptions apply. A party asserting error on appeal must provide citation of authority and argument, or nothing is presented for review. Failure to do so

waives the claimed error. TEX.R.APP.P. 74(d) & 74(f); *State v. Gonzalez,* 855 S.W.2d 692, 697 (Tex.Crim.App.1993); *McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App. 1980); *Texaco v. Pennzoil,* 729 S.W.2d 768, 810 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). By failing to adequately brief his sixth and seventh points of error, Appellant has waived the error he alleges in them.

▪▪▪ Assuming, arguendo, Appellant has properly presented his seventh point of error for review, we find the letter contains no statements that were offered for their truth [7]. Among other definitional elements, hearsay must consist of a statement that is offered for its truth. TEX.R.CRIM.EVID. 801(d) (definition of hearsay). The letter's contents are significant for their existence, independent of their veracity. They served to corroborate Appellant's statements about who he planned to meet and where, and therefore call into question his purpose in doing so. One plausible reason he planned to do so was to consummate a drug transaction. The letter does not identify Appellant or expressly refer to a drug transaction. Thus, it contains no damning statements whose truth would directly implicate Appellant. The letter merely indicates the author would wait with "Ramon" at the same place Appellant planned to meet Ramon Huerta, the owner of the vehicle. Whether or not the author's statements were truthful, their very existence elucidates Appellant's state of mind, and therefore the closely related issue of whether he knowingly or intentionally possessed the contraband, because independent evidence, the ultimate source of which was Appellant's mouth, showed he planned to go to the very place the letter's author said he would wait. Although the fact that Appellant's intended destination coincided with the location specified in the letter might lend an air of veracity to the letter's statements, it doesn't render them any more important, and does not require the conclusion that they were offered for their truth.[8] The letter does not constitute hearsay because its contents were not offered for their truth. We therefore overrule Appellant's seventh point of error.

▪▪▪ In his eighth and final point of error, Appellant complains of the sufficiency of the evidence that he knowingly or intentionally possessed the marihuana. In reviewing the sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex. Crim.App.1991); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Humason v. State,* 728 S.W.2d 363, 366 (Tex.Crim.App.

---

7. We think a mere nod to the rule that proscribes hearsay evidence might, under exceedingly generous standards, be sufficient to adequately present the issue because of the well known principles it involves and the relatively simple analysis required to address it. Perhaps obviously, we do not find the same to be true of the issue of Appellant's Sixth Amendment right to confront witnesses against him. We are generally cognizant of the difficulty courts at all levels have encountered when a defendant claims that the admission of hearsay evidence against him deprives him of his Sixth Amendment right to confront witnesses against him or of his Fifth and Fourteenth Amendment rights to due process. We think the confrontation issue sufficiently complex to render the citation of authority at least prudent. Moreover, we think that the jurisprudence surrounding the issue is so vast as to require the citation of at least some authority to properly present it for appellate review.

8. Texas Rule of Criminal Evidence 801(c) defines "matter asserted" to include any "matter implied by a statement, if the probative value of the statement as offered flows from declarant's belief as to the matter." We recognize the letter's probative value is in part attributable to the fact that Appellant may have known about it and believed its contents to be true. This merely establishes that the letter asserts particular matters. Our analysis focuses on whether those assertions were offered for their truth. Thus, although the letter may implicate Rule 801(c) because the probative value of its assertions in part flows from Appellant's possible belief in them, the letter still fails to meet the definitional requirements of Rule 801(d) because the statements containing those assertions were not offered for their truth.

1987). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Dwyer v. State,* 836 S.W.2d 700, 702 (Tex. App.—El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence or evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991); *Leyva v. State,* 840 S.W.2d 757, 759 (Tex.App.—El Paso 1992, pet. ref'd); *Bennett v. State,* 831 S.W.2d 20, 22 (Tex.App.—El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988)).

 To prove unlawful possession of a controlled substance, the State must prove the accused (1) exercised care, control and management over the contraband, and that (2) the accused knew the substance he possessed was contraband. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988); *Nunn v. State,* 640 S.W.2d 304, 305 (Tex.Crim.App. 1982); *Musick v. State,* 862 S.W.2d 794 (Tex. App.—El Paso 1993, pet. ref'd). The evidence must affirmatively link the accused to the contraband by a showing which indicates the accused's knowledge and control of the contraband. *Waldon v. State,* 579 S.W.2d 499, 501 (Tex.Crim.App.1979); *see also Wiersing v. State,* 571 S.W.2d 188, 190 (Tex. Crim.App.1978). The burden of showing the affirmative link or links rests upon the State. *Damron v. State,* 570 S.W.2d 933, 935 (Tex. Crim.App.1978). Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App. 1985); *Oaks v. State,* 642 S.W.2d 174, 177 (Tex.Crim.App.1982). Mere presence of the defendant at the scene of the offense is not enough. Where the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively connect or link the appellant to the contraband by sole or joint possession.

Affirmative and relevant facts linking an accused to the contraband are identified in several opinions. *See, e.g., Martin v. State,* 753 S.W.2d 384, 387–388 (Tex.Crim.App. 1988); *Guiton v. State,* 742 S.W.2d 5, 8–10 (Tex.Crim.App.1987); *Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Any list of affirmative links can only aspire to exhaustiveness. The phrase "affirmative link" in connection with narcotic drug cases apparently appeared for the first time in Texas in *Haynes v. State,* 475 S.W.2d 739, 742 (Tex.Crim.App.1971). *Castellano v. State,* 810 S.W.2d 800, 805 (Tex. App.—Austin 1991, no pet.) (opinion by John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals). *Haynes* was followed by *Payne v. State,* 480 S.W.2d 732, 734 (Tex.Crim.App.1972), and a legion of other narcotic cases using the term and requiring an affirmative link. *Castellano v. State,* 810 S.W.2d at 805. *Castellano* finds that this requirement was an outgrowth of the Court of Criminal Appeals's approach to sufficiency review in circumstantial evidence cases, which reasoned that unless the defendant is "affirmatively" linked to the drugs or narcotics, there will be an outstanding reasonable hypothesis that the defendant did not possess the contraband at all, or at least did not know the item he possessed was of a forbidden nature. *Id.* In *Human v. State,* 749 S.W.2d 832, 834 (Tex.Crim.App.1988), the Court explained:

> Where the State's case is based upon circumstantial evidence, the "exclusion of an outstanding reasonable hypothesis" test may be used as one means of making the determination whether the evidence is sufficient.

**652**

*Id.* (emphasis added)[9].

▉ Appellant cites a lack of direct proof that he knowingly or intentionally possessed the marihuana. Proof of a culpable mental state generally exists in circumstantial evidence. *Gardner v. State,* 736 S.W.2d 179, 182 (Tex.App.—Dallas 1987), *aff'd,* 780 S.W.2d 259 (Tex.Crim.App.1989). Thus, proof of knowledge is an inference drawn by the trier of fact from all the circumstances. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim. App.1978); *Trejo v. State,* 766 S.W.2d 381, 385–386 (Tex.App.—Austin 1989, no pet.). Knowledge can be inferred from the conduct of and remarks by the accused and from circumstances surrounding the acts engaged in by the accused. *Lewis v. State,* 638 S.W.2d 148 (Tex.App.—El Paso 1982, pet. ref'd); *Sharpe v. State,* 881 S.W.2d 487 (Tex. App.—El Paso 1994, no pet.).

▉ That Appellant was alone in the vehicle he was driving serves as evidence he exercised dominion or control over the vehicle in which the contraband was concealed, and he may therefore be deemed to have possessed the contraband. *Castellano v. State,* 810 S.W.2d at 806; *see United States v. Olivier–Becerril,* 861 F.2d 424, 426 (5th Cir.1988). Knowledge of the presence of contraband may be inferred from control over the vehicle in which the contraband is concealed, particularly where the amount of the contraband is large enough to indicate that the accused knew of its presence. *Castellano v. State,* 810 S.W.2d at 806 (citing *United States v. Richardson,* 848 F.2d 509, 513 (5th Cir.1988); comparing *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App. 1981); *Carvajal v. State,* 529 S.W.2d 517, 520–21 (Tex.Crim.App.1975), *cert. denied,* 424 U.S. 926, 96 S.Ct. 1139, 47 L.Ed.2d 336 (1976)). Courts have cautioned, however, that when the contraband is found in hidden compartments in a vehicle, reliance should not be placed solely upon control of the vehicle to show knowledge. *Id.* (citing *Olivier–Becerril,* 861 F.2d at 426–27; *United States v. Del Aguila–Reyes,* 722 F.2d 155, 157 (5th

Cir.1983)). Thus, we must look to additional factors indicating knowledge such as circumstances indicating a consciousness of guilt on the part of the defendant.

▉ The jury was well aware that the cargo with which Appellant had been entrusted was valuable. It was a rational inference that Appellant would not have been entrusted in taking the valuable cargo across an international border if he were a mere innocent, ignorant of all the details surrounding his responsibility and the importance of the cargo in his care. *See Castellano v. State,* 810 S.W.2d at 806 (finding similar inference rational, and citing *Del Aguila–Reyes,* 722 F.2d at 157). In addition, Appellant appeared nervous when stopped at the bridge, actually having difficulty opening the trunk when asked to do so because his hands were shaking. The jury may have rationally inferred from this evidence that Appellant's knowledge of the contraband was the cause of his nervousness. The jury also had before it the much disputed letter found in the vehicle. It indicates the author would wait with "Ramon" for "Humberto" and others to discuss their "matter." Appellant independently told inspectors he planned to meet Ramon Huerta at the very place the letter indicates the author would be waiting with "Ramon." The jury may have rationally inferred from this that Appellant was planning to meet Huerta at the designated location to consummate a drug deal, which in turn would have permitted the jury to conclude Appellant knew the vehicle he was driving was laden with marihuana.

In viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have rationally found beyond a reasonable doubt all of the essential elements of the offense charged, including care, control, and management of the marihuana, and that Appellant intentionally or knowingly possessed the contraband. Accordingly, Appellant's eighth point of error is overruled.

**9.** The parties engage in much argument over whether the affirmative link requirement survived the changes in sufficiency review wrought by *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991). We think it unnecessary to address this issue because we find the evidence sufficient to establish an affirmative link.

Having overruled Appellant's salient points of error, we affirm the judgment of the trial court.

McCOLLUM, J., not participating.