



## MEMORANDUM OPINION

No. 04-08-00482-CR

Kenneth **INGLE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-1982
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:   Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  July 15, 2009

AFFIRMED

This appeal stems from Appellant Kenneth Ingle's conviction of possession of cocaine and possession of cocaine with intent to deliver.  On appeal, Ingle argues the evidence is factually insufficient to support the jury's verdict.  We affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

Based on information obtained from a confidential informant, Bexar County Sheriff's Deputy Shane Huber requested a search warrant based on "Ken-Dog's" sale of cocaine to another individual. The informant described "Ken-Dog" as a light-skinned male, with severe psoriasis on his arms and legs, and a colostomy bag. Additionally, the informant provided that "Ken-Dog" resided in a back room separated from the rest of the residence by a hanging blanket.

When the officers served the warrant, they confirmed the informant's description of the home's interior, including the hanging blanket. As Deputy Huber pulled down the blanket, he saw an individual fleeing from the back of the residence. Deputy Huber pursued the individual, eventually tackling him. The individual, identified as Appellant Kenneth Ingle, matched the description provided by the informant. After capturing Ingle, Deputy Huber noted Ingle was bleeding and his colostomy bag was broken. Ingle was handcuffed and placed in a chair on the back patio of the residence. Due to concerns for officer safety, and the well-being of Ingle, the officers immediately sought assistance from Emergency Medical Services (EMS) and did not conduct a pat-down search of Ingle.[1]

The officers secured the scene and Ingle was seated, along with the other four individuals at the residence, outside on the patio under the supervision of San Antonio Police Officer Frank Tapia. When EMS arrived at the scene, Deputy Huber escorted Ingle to the EMS unit. According to Officer Tapia, when Ingle stood-up, Officer Tapia observed Ingle drop a clear plastic bag containing a white powdery substance. Officer Tapia further testified that he was standing no more than five feet from Ingle when he saw the bag drop and that he was watching all of the individuals for both officer safety and to make sure no evidence was destroyed.

---

[1] Several officers testified that Ingle was covered with blood and feces and, because they did not have gloves and were concerned for officer safety, no pat-down was performed.

Although he did not actually see the bag drop from Ingle's waistband, Officer Tapia testified that "when [Ingle] stood up, it fell from right where he was at."

The contents of the bag tested positive for cocaine. Additionally, the search of the residence, specifically Ingle's bedroom, produced: a small plastic bag tip containing cocaine, a digital gram scale, cut bag corners, and clear cellophane baggies consistent with the type used for packaging cocaine. Additionally, marijuana was located in another bedroom. After the scene was secured, Deputy Keith Goodell took pictures and a video-recording of the scene, including the officers identifying the precise location from where items were seized.[2] Ingle was charged with felony possession of cocaine and intent to distribute cocaine.

## STANDARD OF REVIEW

In the present case, Ingle challenges only the factual sufficiency of the evidence. In a factual sufficiency review, we consider all the evidence in a neutral light and only reverse if: (1) the evidence is so weak as to make the verdict "'clearly wrong and manifestly unjust,'" or (2) the verdict is "against the great weight and preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We cannot "declare that a conflict in the evidence justifies a new trial simply because [we] disagree[] with the jury's resolution of that conflict," and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See Watson*, 204 S.W.3d at 417.

## FACTUAL SUFFICIENCY

### A. Possession of a Controlled Substance

To prove unlawful possession of a controlled substance, "'the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew

---

[2] On cross-examination, Deputy Goodell explained that when entering a residence on a knock-and-announce, the concern is for officer safety and no electronic equipment is used until after the scene is secured.

the matter possessed was contraband.'" *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (quoting *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)); TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon Supp. 2008). Here, the State had to prove that Ingle possessed cocaine in an amount of more than four grams, but less than two hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112, 481.115 (Vernon 2003); § 481.102 (Vernon Supp. 2008).

Ingle argues the evidence failed to establish his possession of the cocaine.[3] Possession is voluntary "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b) (Vernon 2003). Ingle contends he was merely present at the house and not in possession of any contraband. The State responds that there are sufficient affirmative links between Ingle and the cocaine to generate a reasonable inference that Ingle knew of the contraband's existence and exercised control over it. *See Brown v. State,* 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Menchaca v. State,* 901 S.W.2d 640, 651 (Tex. App.—El Paso 1995, pet. ref'd).

Although "mere presence at the location where drugs are found is . . . insufficient . . . to establish [possession], presence or proximity, when combined with other [affirmative links], may well be sufficient to establish [custody or control] beyond a reasonable doubt." *Evans*, 202 S.W.3d. at 162; *accord Taylor v. State,* 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Evidence of the affirmative links "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Brown,* 911 S.W.2d at 747. Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered

---

[3] Ingle does not contest either that the substance seized was cocaine or that it weighed in excess of four grams.

on a case-by-case basis. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

A non-exclusive list of possible links Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband include:

(1)  the defendant's presence when a search is conducted;
(2)  whether the contraband was in plain view;
(3)  the defendant's proximity to and the accessibility of the narcotic;
(4)  whether the defendant attempted to flee;
(5)  whether other contraband or drug paraphernalia were present;
(6)  whether the defendant owned or had the right to possess the place where the drugs were found; and
(7)  whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12; *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."). The State need not, however, prove each and every affirmative link set out in *Evans*; but instead, "the 'logical force' or degree to which the links, alone or in combination, tend to affirmatively link the accused to the contraband." *Taylor,* 106 S.W.3d at 831.

## B.  Discrepancies in the Testimony

In order to show that Ingle was in possession of the cocaine, the State provided the following links to support Ingle's conviction:

(1)  Ingle was present when the search was conducted;
(2)  the narcotics dropped from Ingle's person;
(3)  other contraband and paraphernalia were located in Ingle's bedroom, specifically: a small plastic bag tip containing cocaine, a digital gram scale, cut bag corners, and clear cellophane baggies consistent with the type used for packaging cocaine;
(4)  Ingle attempted to flee; and
(5)  the informant's information that the contraband would be found in Ingle's bedroom was confirmed.

Ingle contends there is a significant amount of testimony that undermines the jury's determination. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (concluding that a

factual sufficiency review requires the court of appeals "to consider the most important evidence that the appellant claims undermines the [fact-finder's] verdict"). Ingle relies on the conflicting testimony of the officers surrounding the location of the cocaine and the video-recording of the scene in support of his contention.

Ingle first discusses the inconsistencies in Officer Tapia's testimony concerning the circumstances surrounding the seizure of the cocaine. On direct examination, Officer Tapia testified that the bag of cocaine fell from Ingle's shorts as Deputy Huber escorted him to the EMS unit. However, on cross-examination, Officer Tapia indicated that he did not actually see the cocaine fall from Ingle's shorts, but instead saw it falling to the ground when Ingle stood up. Further, Ingle points to the video-recording wherein Deputy Tapia states, "while searching on the ground I found this exhibit" to contradict Deputy Tapia's claim that he witnessed the cocaine fall from Ingle. In addition, Deputy Huber testified that after reading the suspects their rights, one of the other deputies saw cocaine fall from Ingle's shorts as he rose from his chair to be treated by EMS personnel. However, the video-recording shows EMS personnel were present and attending to Ingle before Deputy Huber read the suspects their rights. To refute his control of the cocaine, Ingle points out that the other suspects all walked by him after he was seated on the patio and, therefore, one of them could have dropped the cocaine. However, as Ingle also points out, all the foregoing theories were presented to the jury.

Even in light of the evidence Ingle asserts is conflicting, the record reveals multiple affirmative links between Ingle and both his possession of the cocaine and his intent to deliver the cocaine. We remain mindful that "the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *See Poindexter*, 153 S.W.3d at 406.

The jury heard defense counsel extensively cross-examine each of the officers regarding the conflicts about which he currently complains, and the jury reached its own conclusion.

We conclude the evidence is not so weak as to make the verdict "'clearly wrong and manifestly unjust,'" and we cannot say that the verdict is "against the great weight and preponderance of the evidence." *See Watson*, 204 S.W.3d at 414-15; *see also Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). We hold the evidence was factually sufficient to support the jury's findings that Ingle possessed the cocaine with intent to deliver. Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH