Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JAMES JORDAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00286-CR



Appeal from


 168th District Court


of El Paso County, Texas


(TC # 20050D01965)





O P I N I O N



 James Jordan appeals his conviction of possession of less than one gram of cocaine. With
the assistance of standby counsel, Appellant represented himself at trial. A jury found Appellant
guilty and assessed his punishment at confinement for one-hundred and eighty days in the state jail. 
We affirm.

FACTUAL SUMMARY


 In April of 2005, the El Paso Police Department had received numerous complaints about
drug dealing occurring in the 4200 to 4700 blocks of North Mesa in El Paso. The area, which
included the Sunset Motel, the Warren Terrace Apartments, the Warren Inn, and the Coronado
Motel, was known to police as a high drug-traffic area. Consequently, on April 21, 2005, police
officer Joe Duarte was assigned the task of patrolling the area in a marked police unit. Sometime
between 12:15 and 12:30 p.m., he saw a lot of vehicles moving in and out of the Sunset Motel. He
watched as a Dodge Lancer driven by Appellant stopped in front of the motel entrance. One person
walked over to the driver's side of the vehicle and stood next to it while being handed something by
Appellant. Duarte could not see what was being handed to them but he believed some type of
transaction had taken place. The Lancer drove out of the parking lot, exited onto Mesa, and drove
north in the direction of Duarte. Duarte was unable to see the front license plate as the vehicle
approached so he pulled behind the vehicle in an attempt to see its rear license plate. It had a paper
plate from an Arizona dealership attached to the rear window but it was difficult to see because the
vehicle was full of luggage and part of the paper plate was falling off. Because the paper plate was
improperly displayed, he was unable to tell whether it was a valid plate or fictitious. Consequently,
Duarte activated his emergency lights in an effort to make a traffic stop for improper display of the
license plate. The vehicle continued on Mesa and turned right on Castellano before stopping. Before
the vehicle came to a complete stop, the passenger opened the door so Duarte stepped out of the
patrol car and yelled at him to close the door and stay in the vehicle. He also observed Appellant
making furtive movements as if he were placing something in the vehicle's center console section. 
Based on his observations and instinct, Duarte believed something was wrong, so he called for
immediate backup. Duarte then walked slowly towards the driver's side and made contact with
Appellant who was upset that Duarte had stopped him. Appellant, who appeared nervous and
agitated, repeatedly stated that he was a Vietnam veteran and told Duarte that he should not be doing
this to him. Concerned about his own safety while still waiting for backup, Duarte placed the
passenger, Andres Mejia, in the patrol car. At this point, Mejia was not under arrest but Duarte
arrested him later after learning he had outstanding traffic warrants. Duarte also made Appellant exit
and conducted a pat-down search to ensure he did not have a weapon. Appellant did not have any
weapons on his person and he denied having any drugs or weapons inside of the vehicle. 

 A plain clothes officer, Guillermo Sifuentes, heard Duarte's request for backup and decided
to stop since he was nearby. Duarte asked Sifuentes to help him watch the subjects. Sifuentes made
casual conversation with Mejia and asked if he knew what was going on. Mejia told him that he had
outstanding warrants. Mejia also told Sifuentes that he had just met Appellant down the street and
Appellant agreed to give him a ride. Mejia said that Appellant had offered to sell him some cocaine. 
 Appellant consented to a search of the vehicle. Duarte made a cursory, visual search of the
vehicle's interior before asking for, and receiving, consent to search a large piece of luggage. Inside
of that luggage, Duarte found a large baggie containing a white powdery substance. Appellant told
Duarte that it was baking soda. Duarte believed that the substance was cocaine and he placed
Appellant under arrest for possession of cocaine. The officers then called for another unit with a
field test kit to test the substance. While waiting for the field test kit, Sifuentes asked Duarte if he
could conduct a more thorough search of the vehicle. Appellant again consented. Sifuentes found
two small plastic baggies containing cocaine on or near the center console on the passenger side. 
The baggies were not in plain view but Sifuentes found them in the area where Duarte had seen
Appellant reaching during the initial part of the stop. The small baggies, which were packaged for
sale on the street and are commonly known as "bindles," contained .25 grams of cocaine. 

 Mejia testified that he had been at a party at the Sunset Inn where other people had been
using cocaine. As he left the motel on foot, Appellant offered to give him a ride. Appellant said he
had some drugs in the car and offered to sell him some but Mejia had only $5 and did not use drugs. 
When the police pulled the car over, Appellant threw something in the middle console of the car. 
 Appellant testified in his own defense at trial. Appellant denied having any cocaine and
explained that he had the baking soda in a baggie because he was moving. On cross-examination,
Appellant admitted that he had been convicted of theft in 1997 and in 1977. According to him, it
was Mejia who was making the furtive movements in the car before when they were pulled over. 
If he had been in possession of cocaine, he would have eaten it rather than trying to hide it in the car. 
However, he admitted that he had occasionally used cocaine in the past. 

 The jury rejected Appellant's defense and found him guilty of possession of less than one
gram of cocaine. Appellant filed a pro se notice of appeal and the court appointed counsel to
represent him on appeal. 

SELF-REPRESENTATION


 Appellant's first three issues relate to his waiver of counsel at trial. In Issue One, he claims
that he did not knowingly and intelligently waive his right to the assistance of counsel at trial. In
Issue Two, he contends that the trial court denied him the right to the effective assistance of counsel 
guaranteed by the Sixth Amendment by denying his request for counsel made shortly before trial
began. In Issue Three, he argues that his right to self-representation was denied because the trial
court appointed stand-by counsel.

 On April 22, 2005, Appellant appeared before the jail magistrate and signed a waiver of
appointment of counsel. On that form, Appellant indicated his intent to represent himself. At
Appellant's arraignment on June 10, 2005, the trial court informed Appellant that he had been
charged by indictment with possession of less than one gram of cocaine and the court inquired
whether Appellant planned to hire an attorney:

 [The Court]: Okay. This is the arraignment. You are entitled to be arraigned in open
court, to have the district attorney read the indictment to you. After that has been
done, then you may enter your plea. You are not required to enter other than a not
guilty plea at this moment. You may then hire an attorney to represent you. I
understand you don't want to hire an attorney?


 [Appellant]: No, ma'am, I really don't, because this is an abomination of
jurisprudence to charge me with this against the peace and dignity of the State. 


When the trial court explained to Appellant that he had various rights, including the right to have an
attorney represent him, Appellant told the court that he was innocent and would "fight this to the
death . . . ." At the conclusion of the arraignment, the court again advised Appellant that he could
hire counsel if he wished, Appellant responded: "I want to dispose of this case with dispatch because
it's a waste of the taxpayers' money."

 Appellant continued to represent himself over the next few months and trial began with jury
selection on July 20, 2005. At some point before the trial started, the court appointed standby
counsel to assist Appellant if he requested. Before the prospective jurors were brought in to the
courtroom, Appellant made an oral motion for continuance. Appellant had spoken with two friends
who are lawyers in Amarillo and they advised him to retain an attorney and file a motion to quash
the indictment because there was no connection between him and the drugs found in the car. The
following exchange then took place:

 [The Court]: Mr. Jordan, you appeared here before me --

 [Appellant]: Yes, ma'am.

 [The Court]: Don't interrupt me. You appeared here before me several months ago
and I specifically told you that I wanted you to hire a lawyer. And your response -


 [Appellant]: I --

 [The Court]: Don't interrupt me. Your response to me was that you didn't need a
lawyer, you didn't want a lawyer, and you were going to represent yourself. And I
asked you if you wanted the Court to appoint a lawyer if you qualified. Your
response was that you didn't qualify because you had some sort of an income. This
case has been set for trial, for a jury trial, for quite some time, Mr. Jordan.


 [Appellant]: Yes, ma'am.

 [The Court]: When you decided to represent yourself, you took on the responsibility
for knowing the law and for knowing the procedures that you would have to follow. 
I have 40 to -- how many people are standing out there?


 [The Bailiff]: 70.

 [The Court]: 70 people, all citizens of El Paso County who have given up their day
at work --


 [Appellant]: Yes, ma'am.

 [The Court]: -- to come here to allow the selection of the jury to take place. For you
to tell the Court at this late minute that you're going to go hire an attorney, I think is
absolutely, absolutely an outrage, when these people have given up their day to come
to be present to allow you to have your right to a trial by jury and the county has to
pay these people for having shown up. I'm sure your friend, the lawyer, told you
about all that.

 [Appellant]: May I speak now, Your Honor?

 [The Court]: Yes.

 [Appellant]: I really can't believe this has come to trial. In view of how this is all
unfolding, I would think that the Court would want the rights that I have as a
defendant to be held in the highest regard. I'm not asking you to do anything that
would inconvenience this Court or anybody, Your Honor. That is not what I'm
asking. I just stated that I was advised -- I was perfectly willing to come here and to
do what I'm going to do -- I'm going to have to do this morning. It's a tremendous
burden on me because I'm not an attorney. But I'm not guilty.


 That's why I have no problem with coming here and being pitted against Mr.
Schulz, who is an attorney. That's okay. I mean, I have been a tremendous underdog
from the start on this thing. It's fine. If the Court feels that I should go ahead with
this, I have no problem with it.


 [The Court]: And did you prepare yourself to proceed this morning?

 [Appellant]: I'm prepared to tell the truth, Your Honor. That should be enough. 

 The trial court then covered additional matters with Appellant before returning to the subject of
Appellant's right to counsel. Appellant responded:

 Here's the thing. I was so taken by this whole thing -- I can't believe I'm in trial. 
This blows me away. I mean, this is completion of the nightmare, because when I
was stopped -- I've never been treated by a policeman like that in my life, but then
that happened, and some things have happened since then. Here I am in trial. It's a
nightmare. 

Appellant went on to explain that he had previously told the court that he could not hire an attorney
and had been told that he did not qualify for court-appointed counsel. He believed that representing
himself was his only option unless he was given a continuance. Appellant understood that by
representing himself he had taken on the obligation to be informed of the law. The trial court
explained that another difficulty Appellant would face by representing himself is that he would
forego the right to remain silent because he would be speaking in front of the jury. Appellant did
not believe that would be a problem because he intended to convey the truth to the jury. The trial
proceeded with Appellant representing himself.

Self-Representation Admonishment


 In Issue One, Appellant contends that he should be given a new trial because the record does
not reflect that he knowingly and intelligently waived his Sixth Amendment right to counsel as
required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In all
criminal prosecutions, the accused has a right to the assistance of counsel for his defense. 
U.S.Const. amend VI. A defendant in a criminal proceeding also has a Sixth Amendment right to
prosecute his own legal defense rather than being represented by counsel. Faretta, 422 U.S. at 819,
95 S.Ct. at 2533. The Supreme Court recognized in Faretta that when an accused manages his own
defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with
the right to counsel. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. Therefore, an accused must, in order
to represent himself, knowingly and intelligently forgo those relinquished benefits. Id. Although
a defendant need not have the skill and experience of a lawyer in order to competently and
intelligently choose self-representation, he should be made aware of the dangers and disadvantages
of self-representation so that the record will establish that he knows what he is doing and his choice
is made with eyes open. Id. The record must contain proper admonishments concerning self-representation and necessary inquiries of the defendant, so that the trial court may make an
assessment of his knowing exercise of the right to defendant himself. Goffney v. State, 843 S.W.2d
583, 585 (Tex.Crim.App. 1992).

 The State asserts that the self-representation admonishment is not required in a case of hybrid
representation or when, as in this case, standby counsel is appointed. The term "standby counsel"
describes situations when, in response to a defendant's request for self-representation, the trial court
instead allows an attorney to be available to advise the defendant and participate in the case, or not,
as requested by the defendant. Walker v. State, 962 S.W.2d 124, 126 (Tex.App.--Houston [1st Dist.]
1997, pet. ref'd); see Faretta, 422 U.S. at 834, 95 S.Ct. at 2541 n.46. If the defendant invokes the
participation of standby counsel, the representation becomes hybrid, which has been described as
"partially pro se and partially by counsel." Walker, 962 S.W.2d at 126, quoting Landers v. State,
550 S.W.2d 272, 280 (Tex.Crim.App. 1977). The Faretta self-representation admonishments are
not required in a case of hybrid representation because there is no waiver of counsel. See Maddox
v. State, 613 S.W.2d 275, 286 (Tex.Crim.App. 1980); Phillips v. State, 604 S.W.2d 904, 908
(Tex.Crim.App. 1979). Texas courts have likewise held that the Sixth Amendment does not require
the self-representation admonishments where standby counsel is appointed but does not participate
in the trial. Walker, 962 S.W.2d at 126; Robertson v. State, 934 S.W.2d 861, 864, 866 (Tex.App.--Houston [14th Dist.] 1996, no pet.). We agree with the Houston courts and will follow Walker and
Robinson. Because Appellant had standby counsel at his disposal, he did not waive his right to the
assistance of counsel; therefore, the trial court was not required to admonish appellant on the dangers
of self-representation. Issue One is overruled.

Withdrawal of Counsel Waiver


 In Issue Two, Appellant contends that the trial court denied him the assistance of counsel
when it denied his request to continue the trial setting so that he could retain counsel. A defendant
may withdraw a waiver of the right to counsel at any time. Tex.Code Crim.Proc.Ann. art. 1.051(h)
(Vernon 2005); Funderburg v. State, 717 S.W.2d 637, 642 (Tex.Crim.App. 1986), citing McKaskle
v. Wiggins, 465 U.S. 168, 104 U.S. S.Ct. 944, 79 L.Ed.2d 122 (1984). However, an accused's right
to represent himself or choose his own counsel cannot be manipulated so as to obstruct the orderly
procedure in the courts or to interfere with the fair administration of justice. Hubbard v. State, 739
S.W.2d 341, 344 (Tex.Crim.App. 1987). A defendant may not use his right to counsel to delay his
trial. Culverhouse v. State, 755 S.W.2d 856, 861 (Tex.Crim.App. 1988). 

 Appellant cites Walker in support of his argument that the court should have allowed him to
withdraw his waiver of counsel. In Walker, the defendant waived his right to counsel and
represented himself during the guilt-innocence phase. Walker, 962 S.W.2d at 127. After the jury
found him guilty, the defendant sought to withdraw his waiver of counsel and permit standby counsel
to proceed as his counsel during the punishment phase. Id. In connection with this request, the
defendant also sought to be excused from the courtroom during the punishment phase. Id. The trial
court denied the request. Id. The court of appeals held that although the trial court was correct that
the defendant could not be excused from the courtroom, (1) the court should have permitted the
defendant to withdraw his waiver of counsel pursuant to Article 1.051(h). Id. at 127-28.
Consequently, the court of appeals reversed for a new punishment hearing.

 This case is factually distinguishable. There is nothing to indicate that the defendant in
Walker was utilizing his right to counsel to delay the trial or otherwise manipulate the administration
of justice. To the contrary, he was ready to proceed with standby counsel. Appellant, on the other
hand, sought to delay trial so that he could retain counsel. He did not ask that standby counsel be
allowed to represent him.

 The record before us supports a conclusion that Appellant attempted to withdraw his waiver
of counsel in order to delay trial. Based on his statements made in open court, Appellant had labored
under an assumption that his case would never go to trial because he was innocent. When the day
for trial arrived and the jury panel was waiting outside of the courtroom, it became obvious that
Appellant's assumption was incorrect and he made an oral motion for continuance in order to retain
counsel. Under the circumstances, the trial court could have reasonably concluded that Appellant's
last minute request to withdraw his waiver of counsel and for a continuance so that he could retain
counsel was nothing more than a ploy to avoid trial and would unnecessarily disrupt the orderly
administration of the court. The trial court did not err by denying Appellant's request for a
continuance so that he could retain counsel. Issue Two is overruled.

Standby Counsel


 In Issue Three, Appellant argues that his right to self-representation was denied by the
appointment of standby counsel. The Supreme Court expressly held in Faretta that a state may--even over the defendant's objection--appoint standby counsel to assist the defendant if and when he
requests help, and to be available to represent the accused in the event that termination of the
defendant's self-representation is necessary. See Faretta, 95 S.Ct. at 2541 n.46. The right to self-representation is undermined if standby counsel's participation is unsolicited or excessively
intrusive, or if it destroys the jury's perception that the defendant is representing himself. See
McKaskle v. Wiggins, 465 U.S. 168, 177, 104 S.Ct. 944, 950-51, 79 L.Ed.2d 122 (1984); Scarbrough
v. State, 777 S.W.2d 83, 92 (Tex.Crim.App. 1989). Appellant did not object to the appointment or
participation of standby counsel at any point during the trial. See McKaskle, 104 S.Ct. at 953
(holding that a pro se defendant's solicitation of or acquiescence in certain types of participation by
counsel substantially undermines later protestations that counsel interfered unacceptably). Further,
standby counsel's participation was not excessive or intrusive. While standby counsel advised
Appellant prior to voir dire of the plea offer made by the State, and participated in the parties'
discussion of the admissibility of Appellant's prior criminal record and at the charge conference,
Appellant controlled his own defense throughout the trial. There is nothing in the record indicating
that standby counsel's limited participation could have altered the jury's perception that Appellant
was conducting or in control of his own defense. We therefore conclude that Appellant's right to
self-representation was not violated by the participation of standby counsel at trial. Issue Three is
overruled.

SUFFICIENCY OF THE EVIDENCE


 In Issue Four, Appellant challenges the legal sufficiency of the evidence supporting his
conviction. More specifically, he argues that the evidence is insufficient to affirmatively link him
to the cocaine found in the car. He also asserts that Mejia's testimony is not credible.

Standard of Review


 In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We consider all
of the evidence, whether admissible or inadmissible. Wilson v. State, 7 S.W.3d 136, 141
(Tex.Crim.App. 1999); Johnson v. State, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998). We do not
resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
Further, the standard of review is the same for both direct evidence and circumstantial evidence
cases. Geesa, 820 S.W.2d at 158.

Affirmative Links


 A person commits an offense if he intentionally or knowingly possesses cocaine. See
Tex.Health & Safety Code Ann. §§ 481.102(3)(D), 481.115(a)(Vernon 2003 & Vernon
Supp. 2006). Possession is defined as "actual care, custody, control, or management." Id. at
§ 481.002(38). To support a conviction for unlawful possession of a controlled substance, the State
must prove that the accused exercised actual care, custody, control, and management over the
contraband, and that the accused knew the substance she possessed was contraband. See Brown v.
State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995); Menchaca v. State, 901 S.W.2d 640, 651
(Tex.App.--El Paso 1995, pet. ref'd). When the defendant is not in exclusive possession or control
of the place where the contraband is found, the State must prove independent facts and circumstances
affirmatively linking her to the contraband. Hackleman v. State, 919 S.W.2d 440, 444 (Tex.App.--Austin 1996, pet. ref'd, untimely filed). An affirmative link generates a reasonable inference that
the accused knew of the contraband'' existence and exercised control over it. See Brown, 911
S.W.2d at 747; Menchaca, 901 S.W.2d at 651. By either direct or circumstantial evidence, the State
"must establish, to the requisite level of confidence, that the accused's connection with the drug was
more than just fortuitous." Brown, 911 S.W.2d at 747.

 Appellant was not in exclusive control of the vehicle where the cocaine was found. 
Therefore, we must examine the record to find additional facts and circumstances that affirmatively
link Appellant and the contraband. Courts have looked to various factors in determining the
existence of an affirmative link, including the following non-exclusive list: (1) the defendant's
presence at the location where a search warrant was executed; (2) whether the contraband was in
plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the
defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed
other contraband when arrested; (6) whether the defendant made incriminating statements when
arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive
gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug
paraphernalia was present; (11) whether the defendant owned or had the right to possess the place
where the drugs were found; (12) whether the contraband was found in an enclosed place; (13)
whether the accused was the operator of an automobile where contraband was found; (14) whether
the defendant was found with a large amount of cash or weapons at the time of his arrest; (15)
whether the conduct of the accused indicated a consciousness of guilt; and (16) whether there was
a significant amount of contraband. See Gregory v. State, 159 S.W.3d 254, 260 (Tex.App.--Beaumont 2005, pet. ref'd); Nguyen v. State, 54 S.W.3d 49, 53 (Tex.App.--Texarkana 2001, pet.
ref'd); Hurtado v. State, 881 S.W.2d 738, 743 n. 1 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd).
The number of factors present is not as important as the logical force the factors have in establishing
the elements of the offense. Corpus v. State, 30 S.W.3d 35, 38 (Tex.App.--Houston [14th Dist.]
2000, pet. ref'd); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App.--Austin 1991, pet. ref'd).

 Our review of the evidence reveals that factors 3, 8, 10, 13, and 15 are present. While
watching a high drug-traffic area, Officer Duarte observed a person approach Appellant's car and
engage in some type of transaction with the driver of the car, Appellant. As Duarte pulled over
Appellant's car for a traffic violation, he saw Appellant making furtive movements and reaching
down as if he were placing something in the center console (factor 8). Mejia confirmed Duarte's
observations when he testified Appellant threw something in the middle console of the car when
Duarte pulled over the vehicle. A subsequent search of the vehicle led to the discovery of two
baggies of cocaine near the center console area of the vehicle where Duarte had seen Appellant
reaching (factors 3 and 13). The officers also found a large baggie of baking soda which is
commonly used to cut or dilute cocaine (factor 10). While Appellant argues that he did nothing to
show a consciousness of guilt (factor 15), the evidence showed that Appellant was upset, nervous,
and agitated from the outset of his encounter with Duarte. See Leyva v. State, 840 S.W.2d 757, 760
(Tex.App.--El Paso 1992, pet. ref'd). In addition to the factors commonly considered, Mejia testified
that Appellant had offered to sell him some cocaine when they were in the car together. 

 Although Appellant challenges the credibility of Mejia's testimony, we must defer to the
jury's resolution of that issue. Near the conclusion of his argument, Appellant summarily refers to
Mejia as an accomplice and states that in the absence of his testimony the State had no case. 
Appellant cites no evidence or authority in support of his assertion that Mejia is an accomplice
witness. To the extent Appellant intended to raise a sufficiency issue related to the accomplice
witness rule, (2) it is inadequately briefed and will not be addressed. See Tex.R.App.P. 38.1(h).

 The logical force of the evidence detailed above tends to affirmatively connect Appellant to
the contraband. We conclude that the evidence is legally sufficient to establish that Appellant
possessed the cocaine. Issue Four is overruled. Having overruled each issue, we affirm the
judgment of the trial court.


May 24, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. In all prosecutions for felonies, the defendant must be personally present at the trial. Tex.Code
Crim.Proc.Ann. art. 33.03 (Vernon 2006). 
2. See Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 2005).