COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

MARIO SAUCEDO,                          §

      Appellant,                          §

v.                                      §

THE STATE OF TEXAS,                     §

      Appellee.                           §

                      §

No. 08-07-00147-CR

Appeal from the

384th Impact Court

of El Paso County, Texas

(TC#20060D00542)

# **O P I N I O N**

This is an appeal from a jury conviction for the offense of possession of marijuana in an amount of fifty pounds or less but more than five pounds. The court assessed punishment at five years' community supervision. We affirm.

At trial, Customs Border Protection Officer Kathryn Johnson testified that on January 26, 2006, at about 6:15 a.m., Appellant drove his pickup truck into the inspection lane leading to her booth at the Paso del Norte Bridge in El Paso, Texas seeking to enter the United States. She stated that the license plate of an approaching vehicle is automatically read by a license plate reader. Her computer then identifies and displays the state of the license plate, the license plate number, the number of times the vehicle with that license plate has crossed the border in the prior seventy-two hours, the Social Security numbers of the officers who previously inspected the vehicle, and the names of the bridges the vehicle crossed. Officer Johnson stated that in this instance, the license plate reader read the number on Appellant's Colorado license plate but it misidentified the state as being New Mexico. The witness stated that this occurs with license

plates from states other that the border states of Texas, California, and New Mexico.

Officer Johnson asked Appellant where he had come from and how long he had been there. Appellant stated that he had been in Chihuahua for two weeks. This assertion was not consistent with the readout of the border crossings on the New Mexico license plate number 518LGH. Officer Johnson asked Appellant what he was bringing back from Mexico, and he stated that he was bringing clothes and cheese. She noticed that there were boxes of tile in the bed of Appellant's truck; she asked him about the tile, and he stated that it belonged to him and was for his personal use. She then manually entered the same license plate number as a Colorado plate. The readout showed multiple border crossings during the time Appellant had claimed he was in Mexico. Specifically, the readout showed crossings on five days between January 12, 2006 and January 26, 2006 at the Ysleta Bridge, the Bridge of the Americas, and the Paso del Norte Bridge. The readout for the New Mexico license plate entry showed eleven border crossings between January 11, 2006 and January 26, 2006 at those same bridges as well as the Santa Teresa Bridge. Officer Johnson stated her opinion that this activity was indicative of a "port shopper." Such an individual makes multiple border bridge crossings to examine the level of security and the method of inspection at each bridge.

Officer Johnson testified that Appellant was cooperative during the interview, and he did not appear to be nervous. She stated that she did not notice anything unusual when Appellant drove up, and she did not know whether or not there was a New Mexico license plate with the same number as the Colorado license plate on Appellant's truck, or if the readout for the New Mexico plate pertained to Appellant's vehicle. Officer Johnson clarified that Appellant had told her that he had been in the city of Chihuahua when he was asked where he had been while he was

in Mexico.[1] She also stated that the tile was in plain sight and she had not smelled marijuana. After her interview, she walked Appellant and his vehicle over to a secondary inspection site where the Customs Border Protection Officers Leo Doyon and Baudilio Martinez conducted an inspection of Appellant's vehicle.

Officer Doyon testified he noticed two boxes of tile in the bed of Appellant's truck. He tore the cardboard away and tried to separate the tile; he was unable to do so as the tile was stuck together. He carried the tile to a location where he could x-ray it. He observed a compartment inside the tiles. He smashed the top layer of the tile with a hammer. He found bundles of a substance packaged in blue plastic. He extracted a substance that was determined to be marijuana.

Officer Doyon stated that he had seen marijuana smuggled across the border in hollowed-out tile on prior occasions. He testified that he found two boxes of tile on the bed of the truck, and he found two boxes in the backseat inside the truck's cab. There were twelve tiles in each box. Officer Doyon stated that there was nothing suspicious about the appearance of the tiles, and he did not smell any marijuana. Furthermore, the boxes weighed and felt like ordinary boxes of tile.

Detective Armando Nanez of the El Paso Police Department testified that Appellant's truck was in his custody at a police station during the course of the court proceedings. During a search of Appellant's truck, he found various receipts for crossing tolls into Mexico, at various

---

[1] It was later clarified by a witness that Chihuahua is the name of both a state and city. That city is the capital of the State of Chihuahua. Further, the city of Juarez is in the state of Chihuahua.

bridges, and a receipt from a 7-Eleven store.[2]

The store receipt was from a 7-Eleven store on Copia Street in El Paso, Texas dated January 25, 2006 at 1:54 p.m. There were five crossing receipts which had been issued from January 11, 2006 to January 26, 2006 showing crossings on the Paso del Norte and Ysleta Bridges.

Customs Border Protection Officer Baudilio Martinez testified that he conducted another declaration procedure at the secondary inspection station. Appellant told him that he lived in Colorado; specifically, he had been in Chihuahua, Chihuahua, Mexico. Officer Martinez asked Appellant if he was bringing back "fruits or vegetables, plants, animals, seeds, meat, liquor, medicines or drugs other than prescribed drugs . . . . Any firearms or ammunition and any monetary instrument in excess of $10,000.00[.]" Appellant denied that he was bringing back any such items and stated that he was bringing back cheese. Appellant stated that he had been in Chihuahua for two weeks. He stated that he owned the truck he was driving. Officer Martinez testified that the crossing receipts matched with the New Mexico plate computer readout. He testified that he did not know who had driven the vehicle during the crossings.

El Paso Police Department Officer Enrique Ledesma testified that the marijuana found inside the tile weighed 37.45 pounds. The value of the marijuana is estimated to be $80 to $90 per ounce if sold on the street, and approximately $250 per pound if sold in bulk.

Appellant testified in his own behalf. He stated that he had lived in Colorado for seven years. He took two weeks vacation to go to Chihuahua, Mexico, to visit his family. Upon arrival at the border, he stayed with a female family acquaintance in Juarez, Mexico for several days

---

[2] Later testimony indicated that the crossing receipts were receipts issued by Mexican officials to indicate the fees paid by individuals to enter the United States.

before continuing into Mexico. He was unable to get a permit to drive his car to the city of Chihuahua so he left his truck and his keys with his acquaintance in Juarez, and he used public transportation to go to Chihuahua. He did not know if anyone used his truck in his absence. It was necessary to leave the keys in the event they were needed to move the truck to accommodate other vehicles. He intended to visit his grandparents and his brother, Carlos Morales, in Chihuahua.

Appellant testified that his brother operated a transportation business similar to UPS. The business operated to send boxes with items of clothing from Mexico to Oklahoma. Appellant stated that when he visited his brother, he asked Appellant if he wanted to take part in the business, and Appellant stated he would consider it. Appellant stated that the boxes of tile were left at his grandparents' house while he and his brother were not there. Someone requested that the boxes be taken to Oklahoma City for somebody else to pick up. Appellant wanted to participate in his brother's business so he volunteered to perform the errand of transporting the boxes to Oklahoma City on his way back to Colorado.

Appellant testified that he stayed in Chihuahua ten or eleven days. When he left, he brought the boxes of tile back to Juarez on a bus. He arrived in Juarez three days before he was arrested at the bridge. On January 26, 2006, he loaded the boxes onto his truck to begin the drive to Oklahoma City. He testified that he did not know the boxes contained marijuana. He did not agree to transport the marijuana into the United States, and he was never suspicious of the boxes. Appellant stated that he did not know if someone had driven his truck while he was in Chihuahua.

On cross-examination Appellant testified that the female acquaintance he stayed with in Juarez was an elderly woman who knew his grandparents. She was the only person he could stay

with in Juarez even though he had not seen her in eighteen years. Upon questioning by the State, Appellant stated that he had not been there eleven days; rather, he was there for nine to ten days.

Appellant stated that he had planned to make future deliveries for his brother into the United States on his days off from work. He stated that he did not know who left the boxes of tile at his grandparent's home. Appellant testified that he did not receive payment for the delivery except for $70 for gasoline. He admitted that he stated to Officer Johnson that the tile was for his own personal use, but he did not know why he said that as the tile did not belong to him. He claimed that he did declare the tile, but he did not know when he had done so. Appellant stated that he was told to leave the tile with some of his brother's friends in Oklahoma City, and the owner would come pick them up. He did not remember the address he was to go to, although he stated that one of his brother's friends was named Leticia Dominguez.

In Issues One and Two, Appellant asserts that the evidence is legally and factually insufficient to support the conviction. In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hernandez v. State*, 946 S.W.2d 108, 110-11 (Tex.App.–El Paso 1997, no pet.). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is to determine whether if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the

light most favorable to the verdict. *See Adelman*, 828 S.W.2d at 421-22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

In a factual sufficiency review, we consider all the evidence in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly unjust. *Id.* We cannot reverse a conviction under the "clearly wrong" or "manifestly unjust" standards simply because, based on the quantum of evidence admitted, we would have voted to acquit. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Nor can we declare that a conflict in the evidence justifies a new trial because we disagree with the jury's resolution of the conflict. *Id.* A new trial will only be granted when the reviewing court determines, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In addition, our review should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *see also Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006) (factual sufficiency review still requires "due deference" be given to the jury's determinations).

A person commits the offense of possession of marijuana if he knowingly or intentionally possesses a usable quantity of marijuana. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2003). Possession is defined as "actual care, custody, control, or management." TEX.HEALTH & SAFETY CODE ANN. § 481.002(38)(Vernon Supp. 2008). To support a conviction for unlawful possession of a controlled substance, the State must prove that the accused (1) exercised actual care, custody, control, and management over the contraband, and (2)

the accused knew the substance he possessed was contraband. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995); *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App.–El Paso 1995, pet. ref'd). Knowledge may be inferred from the circumstances. *Linton v. State*, 15 S.W.3d 615, 618 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd).

When the defendant is not in exclusive possession or control of the place where the contraband is found, the State must prove additional independent facts and circumstances affirmatively linking him to the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *See Brown*, 911 S.W.2d at 747; *Menchaca*, 901 S.W.2d at 651. By either direct or circumstantial evidence, the State "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown*, 911 S.W.2d at 747.

Affirmative links connecting a defendant to the contraband may include the following: (1) the contraband was in plain view; (2) the contraband was conveniently accessible to the accused; (3) the accused was the owner of the place where the contraband was found; (4) the accused was the driver of the automobile in which the contraband was found; (5) the contraband was found on the same side of the car seat as the accused was sitting; (6) the place where the contraband was found was enclosed; (7) the contraband emitted a strong odor; (8) paraphernalia to use the contraband was in view of or found on the accused; (9) conduct by the accused indicated a consciousness of guilt; (10) the accused had a special connection to the contraband; (11) occupants of the automobile gave conflicting statements about relevant matters; (12) the physical condition of the accused was compatible with recent consumption of the contraband found in the car; (13) traces of the contraband were found on the accused; (14) affirmative

statements connect the accused to the contraband; (15) the accused possessed other contraband when arrested; and (16) the amount of contraband found. *See Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.–Corpus Christi 2002, no pet.); *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex.App.–Texarkana 2001, pet. ref'd); *Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.–Texarkana 1998, pet. ref'd); *De La Paz v. State*, 901 S.W.2d 571, 583-84 (Tex.App.–El Paso 1995, pet. ref'd). There is no set formula of facts necessary to support an inference of knowing possession. *Hyett v. State*, 58 S.W.3d 826, 830 (Tex.App.–Houston [14th Dist.] 2001, pet. ref'd). Moreover, the number of factors present is less important than the logical force the factors have in establishing the elements of the offense. *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd).

Here, Appellant was the owner of the truck, he was in sole possession of the contraband, some of the drugs were in the vehicle in close proximity to the driver. Furthermore, at the inspection station, Appellant initially stated that he owned the boxes and they were for his own personal use. Perhaps more telling is the implausibility of his story explaining his actions. Here, the evidence from the Colorado license plate readout indicates, at least, that the vehicle was used in crossing at a time Appellant claimed to be in Chihuahua. The jury was free to infer guilty knowledge from the implausibility of Appellant's story. *See Bethancourt-Rosales v. State,* 50 S.W.3d 650, 655 (Tex.App.–Waco 2001, pet. ref'd). We note also that Appellant declared only the cheese and some clothes which indicated a desire to distance himself from the contraband thereby providing an affirmative link to the marijuana. *See Harris v. State,* 994 S.W.2d 927, 934 (Tex.App.–Waco 1999, pet. ref'd). Another factor showing affirmative linkage is the fact that there was testimony that the border crossing activity was indicative of port shopping, and hiding drugs in tile was a known method of smuggling contraband. *See Bethancourt-Rosales,* 50

S.W.3d at 655.

Given these factors and viewing the evidence in the light most favorable to the verdict, we find that the evidence is legally sufficient to support the conviction. Regarding the factual sufficiency of the evidence, while Appellant provided an innocent explanation for the presence of the drugs, the story was such that the jury could reasonably disbelieve it. The unknown parties and the unreasonableness of the explanation allowed the jury to disbelieve his story even viewing the evidence in a neutral light. We find that the evidence is factually sufficient to support the conviction. Issues One and Two are overruled.

We affirm the judgment of the trial court.

DAVID WELLINGTON CHEW, Chief Justice

April 23, 2009

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment

(Do Not Publish)