NO. 07-08-0493-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 6, 2009
_____

FREDDIE JOE NUNN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 6327; HONORABLE STEVEN EMMERT, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Freddie Joe Nunn, appeals his conviction for possession of a controlled substance, cocaine, in an amount of 400 grams or more.[1]  Appellant was sentenced to serve 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).  We affirm.

_____

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2003).

Factual and Procedural Background

On December 6, 2001, appellant was stopped on Interstate Highway 40 by Texas Department of Public Safety Trooper Jason Henderson for driving 75 mph in a posted 70 mph zone. When Henderson approached appellant's Ford Expedition to advise him of the purpose of the stop, Henderson noticed a very strong odor of an air freshener coming from the passenger compartment. As Henderson visited with appellant about the purpose of the stop, he noticed appellant was very nervous. Upon asking for appellant's driver's license and proof of insurance, Henderson noticed that appellant's hands were visibly shaking when the insurance card was handed to him. When asked who owned the car, appellant first started to give a name that sounded like David and then, upon reading the insurance card, stated Mark. Appellant advised he was driving the vehicle from Phoenix, Arizona to Cleveland, Ohio as a favor for a friend. However, appellant was unable to give Henderson an address in Cleveland where he was to deliver the vehicle. Henderson requested permission to search the vehicle and appellant consented. When Henderson went to the cargo compartment of the vehicle, he could smell the strong odor of fresh paint and "bondo." These scents led Henderson to believe that some recent modifications had occurred to the vehicle. Upon searching, Henderson discovered a hidden compartment in the rear portion of the vehicle. The compartment held 14.59 kilograms of cocaine. Appellant stated to Henderson that he had no knowledge of a hidden compartment or that it contained cocaine.

Appellant was subsequently tried before a jury for the offense of possession of the cocaine. After jury selection, but while the jury was not present in the courtroom, the trial

2

judge asked that appellant and his trial counsel change their respective positions at counsel table. Appellant was initially seated closest to the State's attorneys. Appellant's trial counsel objected to the request but the trial court overruled the objection. During the examination of Henderson, testimony was given about appellant's prior involvement with the criminal justice system. Appellant objected that the evidence was presented in violation of Texas Rule of Evidence 404(b) and a previously granted motion in limine. See TEX. R. EVID. 404(b). The trial court sustained the objection and ordered the jury to disregard the statement. Appellant moved for a mistrial which was denied. When appellant testified, the attorneys for the State stood up and stepped back from counsel table. Appellant objected to this as an effort by the State to portray appellant as a dangerous person and requested a mistrial. The trial court overruled the request for a mistrial.

In addition to soliciting testimony from witnesses about the chain of custody of the cocaine and its subsequent testing by Department of Public Safety chemist, the State introduced the testimony of FBI Special Agent Gill. Gill testified about his investigation of a drug smuggling and distribution network in Ohio. Gill testified that his investigation linked appellant to this drug operation. The jury subsequently convicted appellant and assessed his punishment at confinement in ID-TDCJ for 20 years.

Through three issues, appellant appeals contending that: 1) the trial court erred in denying his motion for mistrial after the State elicited testimony regarding inadmissible extraneous offenses; 2) the trial court erred in denying his motion for mistrial based on the State's actions portraying appellant as a violent and dangerous person; and 3) the

3

evidence was legally and factually insufficient to support the conviction. Disagreeing with appellant, we will affirm the judgment of the trial court.

## Motions for Mistrial

### Standard of Review

Denial of a motion for mistrial is reviewed under an abuse of discretion standard. See Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. Id. The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. Id. Further, on appeal, we generally presume the jury follows the trial court's instructions, such as an instruction to disregard, in the manner presented. See Thrift v. State, 176 S.W.3d 221, 224 (Tex.Crim.App. 2005). While the presumption is refutable, the appellant must be able to point to evidence contained in the record to prove that the jury failed to follow the trial court's instruction. Id.

### Motion for Mistrial-Extraneous Offense Testimony

Appellant's first issue concerns a portion of the testimony of Henderson. After describing a number of observations that lead Henderson to believe that appellant might be carrying drugs in his vehicle, the State asked, "And was it at that point where you asked for permission to search the vehicle." Henderson replied that,

4

As I issued the citation, I could hear on my outside speakers that Childress DPS was giving back his prior criminal arrests, I went and stood by my car and listened to those. It advised that he had been arrested for reckless driving, DUI and also had a prior arrest for violation of a controlled substance, dangerous drug. At that point in time, I finished the citation.

Appellant's trial counsel objected and, after a discussion at the bench, the trial court sustained the objection and instructed the jury to disregard and not consider the last statement of the witness for any purpose. Appellant moved for a mistrial and the motion was denied.

The record before the Court reflects that the statement made by Henderson was not given in answer to a question designed to elicit testimony about any extraneous offenses. Clearly, the question was to determine when the officer asked for permission to search and not why he asked permission to search the vehicle. Further, appellant has pointed to no evidence in the record that would indicate that the jury failed to follow the immediate instruction of the trial court to disregard the testimony. Id. Under these facts we must assume that the jury followed the instructions of the trial court to disregard the testimony. Ladd, 3 S.W.3d at 567. Accordingly, no error has been shown. Id. Appellant's issue regarding the first mistrial motion is overruled.

Motion for Mistrial-Prosecutorial Misconduct

Appellant's next contention involves two alleged instances of prosecutorial misconduct that required a mistrial. We will examine each alleged incident.

In the first instance, after the jury had been selected and sworn, but while the jury was out of the courtroom, the trial judge instructed appellant and trial counsel to switch seats at counsel table. The instruction to change places at counsel table was based upon a request made to the trial court by the State's attorneys. It is noteworthy that the trial court also stated that the changing of seats would better accommodate the terrible acoustics in the courtroom.

The second instance of alleged misconduct by the State's attorneys occurred when appellant testified. After appellant had finished testifying and returned to his seat, trial counsel asked permission to approach the bench. At the bench conference, trial counsel complained about the action of the State's attorneys standing and moving away from counsel table when appellant walked behind counsel table going to or from the witness chair. Counsel's complaint at trial was that this sent a message to the jury that appellant was a dangerous and bad man. The trial court stated that it was common practice for the State's attorneys to move away from counsel table when a defendant walked behind counsel table going to and from the witness chair.

Although appellant contends that these actions, in both instances, were acts of prosecutorial misconduct, he has provided the court with no authority for that proposition. In fact, appellant has provided the court with no authority for how the courts in Texas even define prosecutorial misconduct. As such, appellant has failed to properly brief this issue. See TEX. R. APP. P. 38.1(i). Appellant has therefore, waived the issue. See Cardenas v. State, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000).

6

Assuming that appellant's brief does properly brief the subject, we note that one instance occurring, as it did, outside the presence of the jury could not have inflamed the minds of the jury to such an extent to render proceeding with trial a wasteful and futile endeavor. Ladd, 3 S.W.3d at 567. As to the second instance, there is nothing in the record that reflects the jury's attention was drawn to the conclusion that appellant would have us reach, that is that the jury perceived appellant as a violent and dangerous person. The decision of a trial judge regarding permissible security precautions in court are reviewed for abuse of discretion. See Long v. State, 823 S.W.2d 259, 282 (Tex.Crim.App. 1991). We find nothing in the record to support the conclusion that the trial court's decision in this matter was an abuse of discretion.

Legal and Factual Sufficiency

Appellant challenges both legal and factual sufficiency. Therefore, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict

7

unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has recently declared that when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner "against a hypothetically correct" jury charge. Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App.), citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008).

<u>Legal Sufficiency</u>

To prove appellant guilty of the indicted offense the State had to prove: 1) appellant; 2) intentionally or knowingly; 3) possessed; 4) a controlled substance, cocaine; 5) in an amount of 400 grams or more. See TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2003). Appellant's contention about the sufficiency of the evidence centers on the proof that appellant possessed the cocaine. To establish possession, the State must prove that: 1) appellant exercised control, management or care over the substance, and 2) appellant knew the matter possessed was contraband. See <u>Poindexter v. State</u>, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005). Because appellant was alone in the vehicle in which the cocaine was found, he may be deemed to have possessed it. See <u>Menchaca v. State</u>, 901 S.W.2d 640, 652 (Tex.App.–El Paso 1995, no pet.). This is because knowledge of the cocaine is inferred from control of the vehicle. <u>Id</u>. However, when the contraband is in a hidden compartment, as was the cocaine in the case at bar, we are cautioned that reliance should not be placed solely upon control of the vehicle. <u>Id</u>. (citing <u>U.S. v. Olivier-Becerril</u>, 861 F.2d 424, 426-27 (5th Cir. 1988). In order to establish possession in such a situation we must look at the other factors surrounding appellant's connection to the cocaine. <u>Id</u>. The type of factors we review are akin to the factors that link a defendant to contraband in a situation where the defendant is not in exclusive possession of the cocaine. <u>Id</u>.

A review of the facts reveals the following factors that a jury might consider. First, there is the initial and continuing nervousness of appellant when Henderson approached the vehicle. Henderson's testimony was that appellant's voice was strained and his hands shook when appellant handed over his driver's license and insurance card. Next, appellant

9

was unable to accurately answer who owned the vehicle. He initially stated David and then, according to Henderson, appellant appeared to read the name on the insurance card and correctly stated Mark. Appellant advised he was traveling from Phoenix, Arizona. When asked where he was headed, appellant stated Cleveland, Ohio, however he was not able to give an address in Cleveland as his destination. Additionally, on the seat next to appellant was an road atlas open to Columbus, Ohio, with an address in Columbus written on it. Then, there is the issue of the strong smell of the air freshener coming from the vehicle. Alone, this might be subject to some rational explanation. However, when Henderson investigated further, he found that the rear compartment of the vehicle had a very strong smell of fresh paint and "bondo." This could lead a jury to view appellant's action of spraying the air freshener to mask the smell of the paint and "bondo" for fear that Henderson would find the hidden compartment. This becomes important because it was this subsequent paint and "bondo" smell that led Henderson to believe that some recent modifications had been made to the rear compartment of the vehicle. Also, an ice chest was located in the passenger compartment next to the driver. Henderson opined that, in his experience in drug interdiction, people transporting drugs often carry food with them so that they do not have to leave the vehicle and drugs unattended during their trip. Finally, there was the testimony of FBI Agent Gill about his investigation of drug trafficking in the Columbus, Ohio area. During his investigation, Agent Gill was able to ascertain that appellant was a good friend of Fernando Sandoval, the person Gill was investigating and who was later convicted of drug trafficking. That investigation revealed that appellant came to Columbus, Ohio, to visit Fernando and flew from Columbus, Ohio, to Phoenix, Arizona, on December 4, which was two days before appellant's arrest.

Appellant cites the Court to an unreported case from the Texas Court of Criminal Appeals, contending that the facts of the present case are so similar to the cited case that we should adopt the opinion of the Court of Criminal Appeals. See Molina v. State, Nos. 205-03, 206-03, 2003 WL 22250391 (Tex.Crim.App. Oct. 1, 2003) (mem. op., not designated for publication). However, the facts of Molina are clearly distinguishable from the case at bar. First, Molina was a passenger and not the driver of the car. Id. at *2. Second, Molina's co-defendant testified that Molina did not know about the drugs. Id. at *3. Third, prior to the trip where Molina was arrested, there was no evidence that connected him with the car. Id. at *3. Finally, although Molina did exhibit nervousness when the stop commenced, he gave his true name and destination. Id. The testimony of his co-defendant bore out this information. The Court in Molina held that there were insufficient links to connect Molina with the drugs, and, therefore, to prove his knowledge of the existence of them. Id. at *4. Accordingly, we do not find Molina to be controlling.

It must be remembered that proof of culpable mental state generally exists only in circumstantial evidence. See Dillon v. State, 574 S.W.2d 92, 94 (Tex.Crim.App 1978). Therefore, proof of knowledge is an inference drawn by the trier of fact from all of the circumstances. Id. From our review of the circumstances, we believe that the jury could have convicted appellant of the charge of possession of cocaine beyond a reasonable doubt. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, appellant's challenge to the legal sufficiency of the evidence is overruled.

11

Factual Sufficiency

We note that appellant's brief states that he is challenging the factual sufficiency of the evidence. However, the brief appears to only address the legal sufficiency of the evidence. Out of caution we will, however, address factual sufficiency.

To determine the factual sufficiency of the evidence, we must now review the evidence in a neutral light to determine its sufficiency. Watson, 204 S.W.3d at 415. When we examine the links in the evidence that would tend to connect appellant to the cocaine, in addition to his exclusive control of the vehicle, we find that a jury would be rationally justified in finding appellant guilty beyond a reasonable doubt. Id. This is so because the jury's determination of this matter is supported by the evidence. Id. We must give deference to that determination when it is supported by the evidence. Id. Finally, appellant has not pointed to any single factual deficiency, other than that explored during the legal sufficiency portion of this opinion, that would undermine our confidence in the jury's verdict. Sims v. State, 99 S.W.3d at 603. Having already addressed those issues, we overrule appellant's factual sufficiency challenge.

Conclusion

Having overruled appellant's issues, we will affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.

12